AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Nebraska

| | | |
|---|---|---|
| United States of America | ) | **SEALED** |
| v. | ) | |
| | ) | Case No. 4:25MJ3128 |
| | ) | |
| | ) | |
| EULISIS MARTIN | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 9___ 2025 in the county of ___Hall___ in the District of ___Nebraska___, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC § 844(f) | Attempting malicious damage to federal property using explosive materials |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF SA JENNIFER SHIPMAN.

☑ Continued on the attached sheet.

*Jennifer Shipman*
_____
*Complainant's signature*

Jennifer Shipman, FBI Special Agent
_____
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date:  6/16/2025

*Ydeluca*
_____
*Judge's signature*

City and state:  Lincoln, Nebraska

Jacqueline M. DeLuca, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jennifer Shipman, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of a criminal complaint and arrest warrant charging Eulisis Martin with a violation of 18 USC § 844(f) – Attempting malicious damage to federal property using explosive materials.

2.      Your affiant has been a Special Agent with the Federal Bureau of Investigation for 15 years. Your affiant is a "Federal Law Enforcement Officer" within the meaning of Federal Rule of Criminal Procedure 41 (a)(2)( c), that is government agent engaging in enforcing the criminal laws and within the category of officers authorized by the Attorney General to request a search warrant. Your affiant is currently assigned to the Omaha Field Office, Grand Island Resident Agency. Previously to being assigned to the Omaha Field Office, your affiant was assigned to the Chicago Field Office. While employed by FBI, your affiant has investigated federal criminal violations related to organized crime, gun and drug trafficking, violent crimes, violent gangs, domestic and international terrorism, child exploitation, and child pornography. You affiant has received numerous hours of trainings related to conducting such criminal investigations.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Martin has violated 18 USC § 844(f) – Attempting malicious damage to federal property using explosive materials, and other statutes including 18 USC § 844(e)

– Willfully making a threat using explosive materials, 18 USC § 844(i) – Attempting malicious use of explosive materials, 26 USC § 5861(d) – Unlawful possession of an unregistered firearm/destructive device and 26 USC § 5861(f) – Unlawfully making a firearm or destructive device and 18 U.S.C. § 3161 – Damage to Federal Property.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      On or about Sunday, June 8, 2025, Federal employees of Homeland Security Investigations (HSI) and Immigration and Customs Enforcement (ICE) worked until approximately 11:00 a.m. These employees work at a publicly available address, 703 South Webb, Grand Island, Nebraska. After the employees finished their work, they left the building, which was secure and undamaged.

7.      On June 9, 2025, at approximately 6:00 a.m. employees returned to work at the same address. As they arrived at the northeast side of the building, they saw "KILL ICE" was spray painted in white spray paint on one of the HSI facility windows. The FBI was contacted and processed the scene for evidence.



8.     Cameras at the facility were not functioning at the time of the incident. Law Enforcement canvassed the area for additional footage and were awaiting the results as of the end of the workday on June 9.

9.     On June 9, 2025, HSI employees left the facility at 3:30 p.m. On June 10, 2025, cleaning staff arrived at the facility at approximately 5:30 a.m. and began to clean the exterior of the building. As they arrived at the exterior of a sallyport[1] which is located inside a fenced enclosure along the northeast corner of the building, they saw a broken bottle/jar with a fabric coming from the lid. They believed the broken glass was from an attempt to utilize a Molotov cocktail. They informed HSI, who then requested the FBI to process the scene.

---

[1] A sallyport is a secured entrance or exit which allows for controlled access to a building. They are often utilized for law enforcement's entry into the building to secure detained individuals.

10.     FBI personnel arrived and processed the scene for evidence. Agents saw the broken glass which appeared to be from a mason jar with a lid that had a floral pattern on it. The fabric appeared to be torn or cut and appeared to likely be from an American flag. The broken glass and fabric had an odor similar to that of gasoline. Images of the lid, fabric and broken glass are provided below (Images 1-3).



(Image 1)



(Image 2)



(Image 3)

11.    Further canvassing of the area led investigators to a nearby business with cameras. Camera footage from the business captured the two parking lots to the north of HSI's building, as well as the gated area that leads to HSI's sallyport on the north side of the building. Located in the middle of the two parking lots is an additional building that houses several businesses. Due to the camera's angle, most of the parking lot to the immediate north of HSI's building is blocked by the fence that surrounds their sallyport, however, the gap between the north part of the fence and the building that divides the parking lots is visible. The parking lot to the north of that building, was also visible.

12.    Camera footage showed a lighter color sedan arrived from the north to the north parking lot at approximately 1:15 a.m. on June 9, 2025 (Image 4 and 5).



(Image 4)



(Image 5)

13.     An individual dressed in dark clothing got out of the vehicle and walked east through the parking lot, then south around the east side of the north building (Image 6 and 7).



06/09/2025 01:18:30

(Image 6)



(Image 7)

14.     The person then walked through the gap between the building and the fence and continued south along the west side of the fence toward the HSI building. The individual is seen about a minute later walking back through the gap between the fence and the north building, then the person walked south along HSI's sallyport fence line and stopped near the southeast edge. A light flickered several times and then the individual made a throwing motion toward the fence and HSI building (Image 8 and 9).



(Image 8)



(Image 9)

15.     The individual then walked back north along the fence, west toward their car and left the area in their vehicle southbound on Webb Road at approximately 1:23 A.M.

16.     After review of the video, it is believed the individual spray painted and threw the Molotov cocktail on the same evening around the same time.

17.     On June 14, 2025, around 1:33 a Grand Island Police Department (GIPD) officer while driving northbound on Webb Road observed an individual wearing dark clothing running along the fence just south of 703 S Webb Road, which is the Department of Homeland Security building. GIPD had been made aware of the vandalism from earlier in this week and went to the location to investigate. As officers approached the area, they noticed several government vehicles located behind the DHS building had slashed tires and were now flat. Officers observed several handprints on the vehicle hoods which appeared to have been made with a person wearing gloves. No suspect was found in the area.

18.     Officers reviewed the License Plate Readers in the area to learn more about the individual who they observed. While doing so, a white Buick Lucerne bearing Nebraska plate 8-D7755 was seen north bound on Webb Rd on June 14, 2025 at 1:01. The vehicle was observed again 1:16 hours on the camera installed just west of DHS at 624 S Webb and later at 1:17 hours. On a camera installed at Webb and Old Potash.



19.    A search of records indicated the registered owner of this vehicle is Eulisis P. Martin. The registered address is 2501 W Division, Grand Island, Nebraska.

20.    Records search for 2501 W Division reveal three potential residents, Martin, DOB ▇▇▇ 2004; Martin's Grandmother Vicki M. Martin, DOB ▇▇▇/1958 and Martin's Grandfather: Patrick A. Martin, DOB ▇▇▇ 1958.

21.    At approximately 2:00 AM, GIPD Officers went to 2501 W Division Street and located the white Buick Lucerne bearing 8-D7755. Officers observed in plain view within the vehicle through the windows, a dark brown coat, several gloves, a protest style sign, white/black scarf commonly used to cover a persons head and face, and two bags under the scarf resembling a tactical style bag.

22.    On the rear of the vehicle, there were stickers that read "No War but the class war" and "RCA" (Revolutionary Communists of America).

23.     After observing this incident, GIPD officers looked further back on the License Plate Readers.[2] They observed the same vehicle registered to Martin on camera multiple times over the June 8-June 9, 2025, night near the time the HSI building was vandalized. More specifically Martin's vehicle was in the area of 703 S Webb on June 8, 2025 at 11:28 pm and later the same night on June 9, 2025 at 1:06 am.

25.     Social media searches for Martin revealed a Facebook page. The profile photo for the account contained photo of a person appearing to be Martin (the person is identical to Martin's NE driver's license photo). In the profile photo, Martin is holding firearm wearing a t-shirt that reads "I was not responsible for what happened in Butler, PA on July 13, 2024." Which references the assassination attempt of President Trump.

26.     Open-source information additionally indicates ⬜⬜⬜ 8083 is tied to a CashApp account belonging to Martin as recent at January of 2025 and Martin's Experian account as recent as October of 2024. The ⬜⬜⬜-8083 was additionally associated with Paypal, Snapchat, and Telegram accounts bearing Martin's name.

27.     It is your Affiant's experience that those who commit many offenses, including ones described in this Affidavit, overwhelmingly bring with them an electronic device for several purposes. Offenders often communicate their actions prior to, during, or after with coconspirators or those with whom they have shared what they would be doing. They may use their electronic

---

[2] Beginning at least April of 2024, Grand Island Nebraska Police Department installed a series of automated license plate readers throughout the city.

devices for directions, or at time, even memorialize their actions by taking photos, videos or posting it to various social media platforms.

28.     On June 14, 2025, based upon the belief of Martin being an impending threat, FBI applied for and received an Emergency Disclosure Request (EDR)  which allows law enforcement to receive pings from a device for a period of 24 hours. More specifically, FBI received information regarding the nearest cell tower the �<span>░░░░</span> 8083 was connecting to every 15 minutes for a 24-hour period beginning 5:14 PM

29.     Verizon also provided a certain amount of historical location data for the ░░░░ 8083. A member of FBI's Cellular Analysis Survey Team (CAST) team analyzed the data for the ░░░░ 8083 on during the early morning hours of June 9, 2025 and June 14, 2025 and found that the ░░░░ 8083 was in the vicinity of the HSI building in Grand Island at the time of both incidents outlined above. Below is a photograph representing the CAST member's analysis of ░░░░ 8083's location at the time of the crimes. The arch represents the range of the cell tower ░░░░-8083 was pinging from. The orange dot is 703 South Webb Road, Grand Island, NE 68803 (the HSI office).





30.    On the afternoon of June 14, 2025 law enforcement received a state-signed search warrant to search the white Buick Lucerne bearing Nebraska plate 8-D7755.

31.    Law Enforcement has been surveilling the residence since June 14th, at 8:30 AM. The Buick Lucerne has not been observed at the 2501 W Division address since that time.

32.    Since the EDR ping began, ▓▓▓▓▓ 8083 has been consistently pinging from a cell tower within 500 meters of 2501 W Division, Grand Island, Nebraska. Indicating either Martin or the phone bearing the ▓▓▓▓ 8083 is at the residence.

33.    On June 15, at approximately 4:06 PM, a male, matching the description of Martin entered the passenger side of a blue vehicle, which then departed 2501 W Division. The driver was an unknown male.  At 4:13 PM, a ping showed that Martin's phone had moved from 2501 W Division. After driving around for approximately 10 minutes, the blue vehicle returned to 2501 W Division. The male exited the passenger side of the car and entered 2501 W Division.  At 4:28 PM, a ping showed that Martin's phone had returned to 2501 W Division. The ping that was received during the movement of the blue vehicle, was along the route the blue vehicle took. In the experience of law enforcement agents conducting surveillance the conduct of the individuals in the car was indicative of counter surveillance.

34.    Later in the evening, on June 15, at approximately 11:28 PM, a male, matching the description of Martin and wearing the same clothes as earlier in the day, entered the passenger side of a blue Ford Fusion registered to Vickie Martin, which then departed 2501 W Division. The driver matched the description of Vickie Martin, Martin's grandmother. After driving around for approximately 40 minutes, the vehicle returned to 2501 W Division. The only stop made was at a gas station to get gas. The male exited the passenger side of the car and entered 2501 W Division. The ping that was received during the movement of the vehicle was along the route the blue vehicle took. In the experience of law enforcement agents conducting surveillance the conduct of the individuals in the car was indicative of counter surveillance.

35.    Based my training and experience counter surveillance is when an individual who believes they are being investigated or watched by law enforcement, attempts to determine whether

they are in fact being surveilled, Counter surveillance can include, changing lanes abruptly and at the last moment; not using a blinker or using a blinker at the last minute; several turns in a row back tracking the route previously travelled quickly turning into businesses and parking lots; general erratic driving. Often individuals are engaged in this type of driving to test to see if they are being followed and to discourage law enforcement from following them further. People who deploy these tactics are individuals who are engaged in criminal activity and are afraid they are being surveilled or followed by law enforcement.

36.    Both times Martin was observed leaving the residence the vehicle he was in was observed by law enforcement to be engaging in these types of counter surveillance tactics.

37.    Cameras operated by Nebraska State Patrol as well as GIPD throughout the city of Grand Island and larger area have additionally been alerted to the situation and have been surveilling for the Buick Lucerne. Thus far, the vehicle has not been observed on these cameras.

38.    FBI CAST examined available ping data from the EDR to attempt to determine if Martin may have moved the Buick Lucerne on the morning of June 14, 2025 after potentially observing GIPD looking at the vehicle. Pings from Martin's phone indicated Martin travelled out into the county in the Grand Island area from 3:42 am to 4:01 am. The CAST member was able to use the pings to estimate an approximate location of where Martin may have travelled in that time before returning to his residence without the Buick Lucerne. They determined the vehicle was likely hidden by Martin on _____ based upon the movement of his phone/the pings.







39. On the morning of June 16, 2025, law enforcement conducted surveillance on ▬▬▬ ▬▬▬▬. The Buick lucerne was visibly observed from the road way to be parked at ▬▬ ▬▬▬▬ Grand Island NE.



40. Based off your Affiant's training and experience, law enforcement believes it likely Martin realized law enforcement's has identified Martin as the target in this investigation and he has since disposed of the vehicle. Martin's access to firearms is currently unknown but his profile photo on Facebook shows him holding a firearm and wearing a shirt that references political violence. Other indications like the bumper stickers on Martin's vehicle and the crimes occurring at the HSI building give further concern for political violence and possible escalation if Martin

realized he has been identified. Martin's prior records indicating suicidal tendencies add to these concerns.

41.    Based off your Affiant's training and experience, it is your Affiant's belief the suspect in this investigation attempted to utilize a "destructive device" as defined in 26 U.S.C. § 5845 to carry out the violations previously set forth in this affidavit. The destructive device was most likely a version of a Molotov cocktail, which is typically comprised of a breakable bottle that contains a flammable liquid. A cloth, fuse or "wick" is put in or attached to the bottle. When the fuse is lit, the device is thrown at the target. Once it hits the target, or near the target, the goal is for the bottle to break and the flammable liquid to catch fire due to contacting the already ignited flame on the fuse. Molotov cocktails can cause considerable damage, or even death should the device work properly. This is due to the ease and speed at which a fire can start and spread with the aid of a fuel or accelerant, and the difficulty to extinguish the fire due to same fuel and rapid spread. The intentions of the suspect were clear not only with the use of the destructive device, but with what they spray painted on the window of the HSI building. Had the device functioned properly, it is possible the HSI building could have caught fire and caused severe damage.

## **CONCLUSION**

42.    Based on the foregoing, I request that the Court issue the proposed criminal complaint and arrest warrant. There is probable cause to believe that Martin has committed a violations of 18 USC § 844(f) – Attempting malicious damage to federal property using explosive materials as well as other statutes.

## **REQUEST FOR SEALING**

43.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

*Jennifer Shipman*

Jennifer Shipman
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone or other reliable electronic means:

6/16/2025
Date

Jacqueline M. DeLuca
United States Magistrate Judge